G-rat, J.
 

 This was an action to recover damages of the defendant for an interference with, or obstruction of, the plaintiff’s business as a hotel and restaurant keeper, alleged to have been caused by the erection and maintenance of a fence upon a strip of land, or alleyway, lying between the hotel premises and the rail
 
 *472
 
 road, depot and property. The hotel building stands on the southwest corner of Michigan and Exchange streets in the city of Buffalo, and adjacent thereto, upon the south, are the defendant’s-yards and depot properties. From Michigan street a strip of land or alleyway runs between the two properties, in a westerly direction, until it reaches the end of the plaintiff’s building, when it turns at right angles to it and runs,-in a northerly direction, to Exchange street. As originally created by deed, it was thirty feet in width and it was intended for a public street; but it never became such by the acceptance of the municipal authorities. Under certain deeds of conveyance the defendant’s predecessor had acquired some title to a portion of this strip, of twenty feet in width, and next adjoining its premises, and had used it for its railroad purposes. The northerly portion of the strip, thus reduced to ten feet in width, remained as an open way, or walk, bounding the hotel premises on their southerly side. The fence, complained of by the plaintiff, was erected along the whole length of this way, on the border line between the twenty feet strip, occupied by the defendant, and the remaining ten feet next to the hotel, and it was constructed up to Exchange street in the same manner. The plaintiff claimed that the whole thirty feet should be open to his use and that such a fence was an unlawful interference with his property rights, and caused a damage to him, by obstructing a patronage which principally came over and across the said strip, or way. The sense of the matter, intended to be conveyed, of course, is that a generally open and unobstructed way between the hotel and the railroad premises is a matter of right in the plaintiff, and that-the defendant, by this enclosure, has acted without warrant of law and has interfered with a hotel and restaurant business derived, more or less, from passengers coming from the railroad premises-freely over the intervening strip of land.
 

 In a prior decision rendered by this court, in an action between the same parties, 106 N. Y., 142; 8 N. Y. State Rep., 612, their relative rights and obligations, respecting the use of this strip, were adjudged upon and determined. That action was brought to restrain the continuance of the fence in question and a certain clause in the deeds, under which the defendant and its predecessor have claimed the right to occupy any portion of the thirty feet, between their premises and the hotel, was the subject of discussion in the opinion. That clause reads as follows, viz.: “ This conveyance is upon the express condition that the said railroad company, their successors or assigns, shall, at all times, maintain an opening-into the premises hereby conveyed, opposite the Exchange Hotel,' so called, adjacent to the premises hereby conveyed, for the convenient access of passengers and their baggage to and from said premises, hereby conveyed, which opening shall at no time be-closed against such passengers and their baggage, subject, however, to all proper regulations of police and railroad discipline of persons on the said premises.”
 

 This clause was held to amount, in effect, to a covenant; which, being inserted in the conveyance by the grantors, who were also-the owners of the hotel, created an easement enuring to the benefi.
 
 *473
 
 of the hotel property; appurtenant to and running with it in favor of its owners or lessees. The plaintiff became and was its lessee and, therefore, had a right to equitable relief against his total exclusion from the twenty feet occupied by the railroad company.
 

 The relief, however, which he was entitled to have, we held should be limited by the language of the deeds; and a judgment below, ordering the entire destruction of the fence, was considered to be erroneous. It was decided that the plaintiff was entitled to “ an opening into the strip through that or any other fence or obstruction, of a size reasonable, proper and fit, which shall be opposite to the hotel and adjacent to the premises conveyed by the deeds and large enough for the convenient access of passengers and their baggage to and from the said strip; which opening must at no time be closed against such passengers and their baggage, and which access must be subject to all proper regulations of police and railroad discipline of persons on the said premises.” This definition of the plaintiff’s legal rights I have taken from the language of the opinion in the prior case.
 

 The question now presented to us is, whether this record discloses that the defendant has sufficiently complied with the obligation resting upon it by force of the covenant in the deeds; or, whether it has so failed in that obligation as to render itself liable in damages to the plaintiff. As to the period of time when, as it appears, the fence was entirely closed up and all access either way precluded, there is no question as to the plaintiff’s right to recover such damages for the injury to his business as may be shown to have been occasioned thereby. As to that period of total exclusion, it was competent for the plaintiff to lay before the jury such facts as had a bearing upon the question of damages and the jury could have assessed the loss occasioned to him. But, when we come to the consideration of the question of the claim of the plaintiff to an indemnity for the balance of the period of time covered by his complaint, I think we must hold that the trial court took an erroneous view of the matter and that no case, either for relief or indemnity, was made out at all.
 

 As the evidence was not, in fact, conflicting, the question of whether there had been a sufficient compliance with the covenant by the defendant became one for the court to decide, under the guidance of our prior ruling upon the force and requirements of the language. The intent of the clause and the purpose of its ■ insertion in the deeds were to secure to the hotel any benefit and advantage which its nearness to the railroad depot would confer, or might promise. The clause operated as a covenant, binding upon the company and which compelled it to preserve, at all times, that advantage to the hotel owner. The plaintiff was entitled to the maintenance of a passage way through the fence between his liciel and the railroad premises, which should be of a reasonable size and fit for the convenient access of passengers to and from the railroad premises. If the defendant has provided that much, it is without fault
 

 After it had changed and reconstructed its depot and incidental
 
 *474
 
 properties, and. the part of its yard opposite to the hotel premises on the south was unused, except for tracks for the passage of trains, it was still bound to observe the agreement resting upon it to preserve a free ingress and egress over the strip it had become possessed of. Its depot for the reception and discharge of passengers continued to be adjacent to the alloy-way in question. Therefore, when in 1880 it built up and kept closed the fence upon the alley-way, it was an unquestionable transgression of rights. But we think the opening of a gateway, of the size described in the proofs, permitting the passage directly from the east side of the depot, over the company’s portion of the alley-way and into the hotel premises, was a substantial compliance with the requirements of the covenant. It was opposite to the hotel and was sufficient for the reasonable accomplishment of every useful purpose intended by the grantors, when they reserved for the benefit of the hotel premises the right of an easement over the portion conveyed to the railroad company. The testimony does not really conflict as to the reasonableness and sufficiency of this gateway as an opening; but the plaintiff seems to think himself still aggrieved in various ways. He thinks himself entitled to a gate, or opening in the fence, opposite to the south side of his hotel, through which passengers might have a full view of his hotel and of his sign board, and might, if they chose, come through, over the tracks, from the cars. We think there is no reason in this claim whatever. The change of situation of depot and train house may have operated to his disadvantage, but that is his misfortune and cannot be the foundation of a legal grievance. With the change of location of depot it was quite proper for the railroad company, in the exercise of its discretion as to a reasonable regulation for the use of its property and the preservation of the safety of individuals, to prevent egress and ingress over a part of its property which was used for the passage of trains.
 

 The plaintiff complains, too, of the regulations as to the passage of people through the gates, which were opened between the depot and the alleyway communicating with the hotel. The company required the possession and exhibition of a ticket as a condition of passage through the gate, and prohibited other than band baggage from being taken in at that point. We think that these were reasonable regulations, and- even if they were not, as we think they were, within the letter and spirit of the covenant, we should regard them as within the general powers and duties of railroad managers to make and enforce. I shall hereafter advert further to the question of these regulations in connection with the charge to the jury.
 

 The only legal conclusion which, I think, we can reach from the evidence in the record before us is that, except for the period when there was a total closing of the fence by the defendant, it complied substantially, and, therefore, sufficiently, with the requirements of the covenant. And a substantial compliance, obviously, was all that was necessary or useful, and all that the law should concern itself with. The object of the existence of the
 
 *475
 
 covenant, respecting the maintenance of an opening into the strip of land conveyed to the railroad company, is effected when one is provided which the evidence demonstrates to be suitable for the convenient use of persons going to or from the hotel premises and the depot. The plaintiff has secured to himself then all the advantage he was entitled to have from any easement which attached to his property. Upon the question of the suitableness of the opening, on the evidence, the court should have pronounced, and should have instructed the jury that the plaintiff was not entitled to recover for any other damages than were proven for the time the gates were closed against any admission. When, therefore, the defendant’s counsel requested the court to charge that if the jury believed the defendant had substantially complied with the covenant, in having the opening where it was, the plaintiff could not recover any damages, he was not only entitled to such an instruction unqualifiedly, but, in fact, was asking for less than was due to his client from the court.
 

 Concerning the portion of the alley way leading from Exchange street south, this record does not disclose that the defendant, or its predecessor, ever acquired any title to any portion of it. It does appear from the proofs that the title to that strip of land remained in the devisees of James Wadsworth, deceased, as tenants in common. What may have been the right and interest which the plaintiff, as lessee of the hotel premises described by him, acquired in that portion of land, is not material for us to determine. For, should we assume that he had some interest capable of being protected against invasion by the defendant’s acts, I. see no evidence whatever of damage upon which a judgment for a pecuniary loss may be predicated. At the most, conceding to him some rightful privilege in the alley way, or that it was an appurtenance, only nominal damages could have been allowed.
 

 The evidence as to the damage to the plaintiff was given by himself, and, among other questions asked of him was the following one, viz.:
 
 “
 
 Q. Do you know what the rental value of your Continental property, real and personal, would have been between the 10th day of September, 1881, and the 28th day of January, 1884, if there had been a sufficient opening kept and maintained by the defendant opposite to your hotel, for the convenient access of passengers and their baggage to and from the twenty-foot strip of land lying south of the hotel ? ” He was permitted to answer this question, against an objection by the defendant’s counsel, based on adequate grounds. This was a grave error committed in the conduct of the trial, and one which influenced the judge’s charge upon the question of damages. If the question was intended to elicit an opinion as to the effect upon . the market rental value of the property of such an opening opposite to the hotel, as was described, it was objectionable for several reasons.
 

 The witness was not shown to be qualified to give such an ■opinion, and the question assumed the insufficiency of the opening ; a matter which it was not for the witness to determine. But that was not, I apprehend, the object of the question. What was
 

 
 *476
 
 attempted to be done was to prove through the witness that he was prejudiced by the existing condition of things as to the opening in the fence, and, under the guise of giving his knowledge, to elicit his opinion that the value of his business to him would have been greater if something different in the way of an opening had been maintained. The witness should not have been permitted to give his opinion upon that head. Hi's testimony should have been confined to stating facts. He might have described the condition of his property. He could have given evidence of what the defendant did to, or upon the land, over which he claimed to possess rights. He could have stated what his business was, and what it amounted to, at times prior and subsequent to any change in the situation and circumstances surrounding its conduct, and it would then be for the jury to draw the conclusions from the facts stated, as to whether the plaintiff had been injured by the defendant and what amount of damages he should recover. The amount of damages to constitute the just compensation a party is legally entitled to for his loss or injury the jury are to determine. If the loss is alleged to be a pecuniary one and there is no evidence to show its extent they could only be allowed to give nominal damages, but, if there are any facts upon which an estimate might be made as to the amount of damage, the jury are the sole arbiters and must assess it In cases where there has been a breach of a covenant respecting an easement in property, by an interference with its proper and fair enjoyment, it may not be possible to reach by computation the exact figures of a right indemnity ; but the jury, when the facts of the case are laid before them, may fix the amount of the damage.
 
 Norman
 
 v.
 
 Wells,
 
 17 Wend., 136. In that case, where the plaintiff sued for damages for breach of covenant respecting the use of a stream for mill purposes, Cowen, J., on the question of the competency of opinions as to those damages, said “ the ordinary and in general the only legal course is to lay such facts before the jury as have a bearing on the question of damages and leave them to fix the amount.”
 

 In
 
 Lamoure
 
 v.
 
 Caryl,
 
 4 Denio, 370, Beardsley, J., said, that “ opinions are to be formed by the jurors; but it is the businiss of witnesses to deal with facts.” In
 
 Fish
 
 v.
 
 Dodge,
 
 4 Denio, 311, Bronson, Ch. J., where a witness had been asked what in her opinion was the amount of damage to plaintiff caused to her boarding'house by a boiler manufactory on defendant’s premises, said, “ it was clearly wrong. * * * It was the business
 

 of the witness to state facts and of the jury to assess damages.” In
 
 Harger
 
 v.
 
 Edmonds,
 
 4 Barb., 258, where, in an action on a covenant in a lease, a question arose as to the value to the defendant’s tavern of a supply of water, of which he had been deprived, a witness was not allowed to testify as to what it was worth to defendant by the day, the quarter and year. In sustaining the ruling above, Gridley, J., said, “the amount of damage would depend for its just determination *
 
 *
 
 on a vast variety of facts, from which any sensible man could form a judgment * * *; ” and he held that when all the material facts about the situation, business and custom of the tavern were
 
 *477
 
 spread before the jury they would be enabled to give a reasonable estimate of the damage.
 

 In
 
 Marcly v. Shults,
 
 29 N. Y., 346, which was an action for damages resulting from overflowing land by means of a dam, Denio, J., in his opinion, said, with reference to a question asked of the plaintiff as to what the value of the use of the house was per annum before the raising of the dam : “ I think this was objectionable as calling for the opinion of the witness. * * * It will not be pretended that a witness could be allowed to state his opinion of the amount of damages. He could describe the character of the overflowing and its effect and then it would be for the jury to estimate the damages.”
 

 In
 
 Teerpenning
 
 v.
 
 Corn Exchange Ins., Co.,
 
 43 N. Y., 279, the opinions of witnesses as to the damages resulting from a particular transaction were held to be inadmissible.
 

 The rule has been long settled that, in such actions for damages, witnesses are to state the facts and are not permitted to determine anything. It is the province of the jury to determine upon the facts, which are spread before them in the evidence, whether the plaintiff has suffered damage and the amount of the proper compensation therefor. We think, too, it was error for the trial judge to refuse to charge the jury that “ the defendant had a right to make regulations for the use of its depot and the regulations which they made, by which a gateman should be stationed and the depot enclosed and that no persons should enter unless they had a ticket and their train was about to leave, was a reasonable and proper regulation.” The defendant was entitled to this, instruction and to a similar one with respect to the regulation that trunks should be taken to the baggage room and checked. The question of the reasonableness of such regulation was one of law and was not one for the jury to pass upon.
 
 Vedder
 
 v.
 
 Fellows,
 
 20 N. Y., 126.
 

 Railroad companies are public corporations, and their principal objects are deemed to be, primarily, in the direction of the public convenience and good. Great responsibilities rest upon them in the conduct of their corporate business, and it is but right that their directors should, in their work of supervision, establish rules and regulations to the end that the public convenience and the public safety shall be best promoted. When, therefore, they require the purchase of tickets as a condition of entrance into the train house and forbid that entrance until a reasonable time before the departure of trains, they consult the public interests, and when they require the checking of trunks and articles committed to their care, they simply adopt reasonable measures with respect to their liability as common carriers which in no sense can be said to conflict with any right of the public and, in this particular case, invades no interest of the plaintiff. It is the duty of such corporations, and they have the right to make rules and regulations as to the management of the railroad business of conveying passengers and their baggage.
 
 Lynch
 
 v.
 
 Metropolitan El. R’way Co.,
 
 90 N. Y., 83. And when the facts are shown with respect to some regulation established by the railroad corporation, it is the province
 
 *478
 
 of the court to pronounce as to its reasonableness, and it should not submit that, with the other questions, to the jury. The covenant in this case, which underlies the plaintiff's rights and the «defendant’s obligations, itself plainly recognizes the principle that ¿regulations must exist as a part of the necessary discipline of railroad management.
 

 The errors pointed out require a reversal of the judgment appealed from and a new trial should be ordered, with costs to abide the event.
 

 All concur.
 

 Reversing 17 N. Y. State Rep., 417.