The plaintiff recovered a judgment for damages against the defendant in an action for personal injuries sustained while in the defendant's service as a car inspector. *Page 112 
He had been employed in that capacity for several years prior to the accident, which occurred on the night of the 29th of May, 1890, while inspecting the cars of a passenger train which had just arrived at the defendant's station at Syracuse. On the arrival of the train the plaintiff immediately commenced to inspect the cars under the direction of the depot master, as he had been accustomed to do for years before. His duties required him sometimes to go under or between the cars, and on the night in question while under or between them he was caught by a sudden movement of the train and sustained injuries of a somewhat serious nature. The plaintiff called as a witness in his own behalf the head inspector, and this witness described the manner in which the plaintiff was required to do his work in the following language: "All trains that passed through the depot were inspected. It is the duty of the car inspectors to look everything over and see that it is safe. When a train arrived in the depot as soon as the train stops the car inspectors commence on each side; sometimes two trains come in together; sometimes commence on the rear end and sometimes on the front end, but generally we commence on the rear end; we let the train go past and see whether there are any flat wheels on it or anything broken. When the train stops, the car inspectors go along from rear to forward end to see if they find anything wrong. The inspectors inspect the running gear, the wheels and drawhead and air brakes, and oil boxes and everything. We sound the iron wheels, and we look over with our eyes the wheels which are not of iron. The inspector goes ahead and opens the oil boxes, and sees whether there is anything hot or whether any oil is needed. He looks the air brakes over and the drawhead. The air brakes are underneath the car — right in the middle of the car. The rubber hose is between the cars and below the car; along the side of the car there are iron pipes. These iron pipes, which run on the bottom of the car, are joined together at the end of each car by a rubber hose. For the purpose of inspecting the air brake, the inspectors go sometimes and look close under. We generally had our heads between the cars; always peek under *Page 113 
nights and look under. Besides the air brakes and wheels, they inspect the brake connection and drawheads. There is a brake beam on each truck, and these two brake beams are coupled with an iron rod, and when you put the brake on they are drawn to each wheel, and retard the motion of the wheel. * * * The inspectors go along, after the train has come to a stop, from one end of the train to the other — one on each side of it — making an examination. If he discovers something broken or out of order, as he passes along the side of the car, if it took any length of time, he first notifies the depot master. The inspector then gives notice to the head end to not move the train; to the man that has charge of the train; the man under whose orders or signals the engineer operates his engine. The inspector tells whoever is in charge that he is going to do the work. We tell them that something is out of order and we are going to do the work and not to move the train. If it is a small matter that is out of order and which the car inspector can repair himself he goes in and repairs it. * * * The inspector, before he went under the car to work, always gave information to those in charge that he was going under there to work and that the car should not be moved until we had heard from him that he had made the repairs and had come out. That is the way plaintiff worked during all the years that he was inspector, and all of the inspectors work in that way." It also appeared that it had been the practice for men to go along the side of the train with the inspectors in order to call them out from under the train at the proper time.
The ground upon which the defendant has been held liable for the result of the accident is that it neglected to observe or enforce its own rules and regulations concerning the inspection of cars in passenger trains. The defendant doubtless owed a duty to the plaintiff and its other employees to use reasonable care and vigilance in the enforcement of all reasonable rules and regulations intended for their protection against accident. The plaintiff testified that up to the time of the accident he was not aware that there existed any rule or regulation as to the method of inspecting cars. There was undoubtedly a well-defined method of doing the work, which had *Page 114 
always before been in use at this station, and which had been found to be perfectly safe since no accident of this character had ever occurred before. That is the method which has already been described and which the plaintiff had followed during all the years of his employment.
But the plaintiff has recovered in this case upon the theory that all the time there was existing among the defendant's standing rules, which had been promulgated and published many years, a regulation relating to the inspection of cars, which applies to this case and which was disregarded at the station to the knowledge of the defendant, and in fact had never been applied or enforced. If the learned counsel for the plaintiff is right in this position, then clearly the judgment ought to stand. The rule thus invoked as the basis of a charge of negligence against the defendant is as follows, being No. 36 of the printed rules: "A blue flag by day and a blue light by night placed on the end of a car denote that car inspectors are at work under or about the car or train.
The car or train thus protected must not be coupled to or moved until the blue signal is removed by the car inspectors. When a car or train standing on a siding is protected by a blue signal, other cars must not be placed in front of it so that the blue signal will be obscured without first notifying the car inspector that he may protect himself."
If this rule had any application to the passenger train that the plaintiff was inspecting when injured, it certainly was not observed on that occasion, and indeed never had been observed. It is not very plain how a blue light on the end of the train on the occasion in question could have prevented the accident or operated as any protection to the defendant, since the force that moved the train did not come from the rear, but from suddenly backing the train towards the east. Every one having charge of the movements of the train knew perfectly well that the cars were being inspected at the time, and a blue light on the end of the train would not have given them any more knowledge than they already had. The depot master wanted to cut certain cars out of the train. He supposed at first that these cars were at the rear of the train, but on discovering *Page 115 
that they were at the head, a change of program became necessary in getting the cars out, and this change resulted in the sudden backward movement that produced the accident.
But we are not concerned with the question whether the blue light would or would not have been of any benefit or protection to the plaintiff. The sole question in the case is whether the rule had any application to the train in question, and we think it had not. It will be seen that the rule is made up of three distinct clauses or sentences. The first simply defines the meaning of the blue light and the blue flag when used. It does not provide that either shall be attached to the rear end of a car on a passenger train. The second provides that when a car or train is thus protected, it must not be coupled or moved until the signal is removed. The third sentence provides for the case of a car or train on a siding, and forbids running other cars in front of it so as to obscure the signal without first notifying the inspector, to the end that he may protect himself. When all is read together, the rule obviously relates to cars or trains on sidings or in the yard, and not to regular passenger trains coming into the station and departing frequently in a few minutes. There is nothing in the language of the rule or in its evident purpose that requires the signal to be placed upon such train or the cars composing it, and negligence cannot be predicated of an omission to do so. It follows that the judgment in this case rests upon a wrong construction of the rule, since the only negligence imputed to the defendant consisted in the omission to place a blue light on the rear car of the train on the night of the accident, and this was upon the assumption that the rule required it.
The legal question was raised by the defendant by motion for a nonsuit and requests to charge, which were denied and exceptions taken.
The judgment should be reversed and a new trial granted, costs to abide the event.
All concur, except MARTIN, J., not voting, and VANN, J., not sitting.
Judgment reversed, etc. *Page 116