IN THE

# COURT OF APPEALS

OF THE

# STATE OF NEW YORK,

COMMENCING FEBRUARY 24, 1903.

---

JEANETTE E. DEVOE, as Administratrix of the Estate of
WILLIAM H. DEVOE, Deceased, Appellant, *v.* THE NEW
YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY,
Respondent.

1. NEGLIGENCE — DUTY OF RAILROADS TO MAKE AND PROMULGATE
RULES FOR THE PROTECTION OF CAR INSPECTORS — QUESTION OF FACT.
When the business of a master is such that the safety of one servant
depends upon the way in which other servants do their work, it is his
duty to make, promulgate and enforce reasonable and sufficient rules for
the protection of the servant exposed to danger; and where car inspectors,
employed at a railroad station at which there were many tracks and
switches upon which a large number of trains came and went every day,
were required to inspect the wheels, running gear, couplings and other
appliances belonging to each car of each train while it was at the station,
and while this was being done there was much switching and moving of
cars from one train to another and trains were constantly coming in and
going out, and several inspectors had been injured in the discharge of
their duties, others had narrowly escaped injury, and many complaints
had been made by employees as to the dangerous work of car inspectors
at such station, and the company was without any printed rule upon the
subject, except one which was a dead letter at such station because it was
not enforced, it is a question of fact for the jury to determine in the trial
of an action, brought for the death of a car inspector who was crushed
between two cars and killed, while in the discharge of his duty, by the
backing up of a train against the train under which he was working,
whether a verbal rule, claimed to have been made by the foreman of the
car department without instructions from the company, or any superior

officer thereof, was made and in use, and, if so, whether such rule was sufficient and properly promulgated under the circumstances.

2. EVIDENCE — RULES OF ANOTHER RAILROAD COMPETENT AND MAY BE PROVED BY PAROL. Upon the trial of such action evidence of any rule relating to the subject recently in force upon another railroad is competent, and it is competent to show by parol from the actual knowledge and recollection of the witness the rule actually enforced while he was in the employment of another railroad and to use any edition of the company's rules to refresh his recollection; it is unnecessary to produce the . manuscript of the rules as written, or the book printed therefrom.

*Devoe* v. *N. Y. C. & H. R. R. R. Co.*, 70 App. Div. 495, reversed.

(Argued January 13, 1903; decided February 24, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 19, 1902, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

This action was brought to recover damages on account of the death of the plaintiff's intestate caused, as alleged, by the negligence of the defendant. The decedent was a car inspector, and the plaintiff claimed that he lost his life because the defendant failed to make, promulgate and enforce reasonable and proper rules for the protection of its car inspectors while they were engaged in the discharge of their duties at its Syracuse station. The defense relied upon was that a safe practice was established by the defendant at said station by the oral instructions and directions of the foreman of its car department which obviated the necessity for more formal rules, and that the decedent was not engaged in discharging his duties as car inspector when he was injured.

*William S. Jenney* for appellant. Whether plaintiff's intestate was engaged in his work of inspection at the time he was injured presented a question of fact for the jury. ( *Whitney* v. *Town of Ticonderoga,* 127 N. Y. 40 ; *People* v. *N. R. R. Co.,* 42 N. Y. 217 ; *Potter* v. *Smith,* 70 N. Y. 299 ; *McLeod* v. *Maloney,* 2 N. Y. S. R. 472 ; *Clark* v. *Dillon,* 97 N. Y. 371 ; *Connor* v. *Keese,* 105 N. Y. 643 ; *Ferris* v.

*Hard*, 135 N. Y. 361 ; *Volkmar* v. *Ry. Co.*, 134 N. Y. 422.) Defendant was negligent in failing to promulgate and enforce rules regulating the work of plaintiff's intestate of inspection of its passenger trains at Syracuse so as to provide for his safety while in the performance of such work, and it was for the jury to determine whether such neglect caused the accident. (*Warn* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 109 ; *Abel* v. *D. & H. C. Co.*, 103 N. Y. 581 ; *Doing* v. *N. Y., O. & W. R. R. Co.*, 155 N. Y. 583 ; *Eastwood* v. *R. M. Co.*, 86 Hun, 92 ; 152 N. Y. 651 ; *Morgan* v. *O. & I. Co.*, 133 N. Y. 666 ; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582 ; *McGovern* v. *R. R. Co.*, 123 N. Y. 285 ; *Reddington* v. *N. Y., O. & W. R. R. Co.*, 84 Hun, 231 ; *Campbell* v. *N. Y. C. R. R. Co.*, 35 Hun, 506 ; *Reagan* v. *R. R. Co.*, 3 Am. St. Rep. 542.) The trial justice did not err in his rulings on evidence or charge to the jury. (*Ford* v. *R. R. Co.*, 124 N. Y. 494 ; *Busby* v. *R. R. Co.*, 107 N. Y. 378.)

*L. B. Williams* for respondent. The evidence is undisputed that at the time of the death of plaintiff's intestate, and for some time prior thereto, defendant had made and promulgated a rule and instituted a practice at its station in Syracuse, which, if observed, would have secured reasonable safety to plaintiff's intestate, and would have prevented the accident in question, and it was not for the jury to say, under these circumstances, that some other or different method of conducting the inspection of trains at that station should have been adopted. (*Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582 ; *Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 673 ; *Kudik* v. *L. V. R. R. Co.*, 78 Hun, 492 ; *Davis* v. *S. I. R. T. Co.*, 1 App. Div. 178 ; *Niles* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 58 ; *Simpson* v. *C. V. R. Co.*, 5 App. Div. 614 ; *Ford* v. *L. S. & M. S. R. Co.*, 124 N. Y. 493 ; *Daley* v. *Brown*, 45 App. Div. 428 ; *Doing* v. *N. Y., O. & W. R. R. Co.*, 151 N. Y. 579.) It was error to leave to the jury the question whether the rule requiring Devoe to put a man on

guard, assuming it to have been in force, was a reasonable and proper rule, such a rule as the defendant, in the exercise of ordinary care for the purpose of reasonable protection of its employees, should have made. (*Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 672; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582; *Niles* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 58–71; *Simpson* v. *C. V. R. Co.*, 5 App. Div. 614; *Kudik* v. *L. V. R. Co.*, 78 Hun, 492; *Davis* v. *S. I. R. Co.*, 1 App. Div. 178.)

Vann, J.   At the Syracuse station of the defendant the track of the Rome, Watertown & Ogdensburg branch of its system of railroads enters from the north and makes a connection in the form of a "Y" with track No. 6 which runs east and west.   On the 19th of July, 1899, at about noon, train No. 10, consisting of nine or ten cars, entered the station from the north, and after standing upon track No. 6 for a few minutes, was pulled easterly so as to clear the switch at the point of the "Y" and enable another train from the north, known as No. 4, to enter upon the same track and discharge its passengers.   Train No. 10 was so long that when it was moved east far enough to clear the point of the "Y," it extended across Franklin street, running north and south, and interrupted travel.   After train No. 4 entered, its engine was uncoupled and proceeded westerly to the engine house.   That train consisted of four cars, the most westerly being a baggage car, which was followed by a smoker and two passenger coaches. The regular engine of train No. 10 had also been detached, and a switch engine, coupled to the easterly end, backed it westerly until within ten or fifteen feet of train No. 4 when it stopped for a short time and then backed on west to couple with that train.   The decedent at this time was between the two passenger coaches of train No. 4 and when the two trains came together his head was caught and he was injured so that he died in a short time.

The jury found for the plaintiff, but upon appeal to the Appellate Division all the justices united in reversing the

judgment, and in their order certified that they reversed " upon questions of law only, the facts having been examined and no error found therein." As the evidence supports the verdict, there is nothing open to review by us, other than the exceptions relating to the evidence and the charge, and unless one or more of these exceptions is sufficient to justify the reversal by the Appellate Division, it is our duty to reverse their determination and affirm the judgment of the trial court. (*Ayres* v. *Delaware, L. & W. R. R. Co.*, 158 N. Y. 254, 258.)

Several witnesses who had been employed as inspectors upon other railroads were called by the plaintiff to show what rules had been provided by the companies operating those roads for the protection of car inspectors. In each instance a book containing the rules of the particular company for which the witness had worked was produced by the plaintiff and shown to him. In several instances it did not appear by the date upon the title page whether it purported to be the edition ·in force while he had so worked or not, but he testified that the rule appearing in the book upon the subject was in force, if not during the entire period of his employment, at least during the last part thereof. To the question whether that rule was in force upon the railroad in question while the witness was employed by it, the defendant objected upon the ground that it was not the best evidence, and now insists that the plaintiff should have produced " the actual edition of the book of rules ·in force during the term of the witness' employment."

We think the exception to the rulings which allowed such questions to be answered raises no error. It was competent to show any rule relating to the subject recently in force upon another railroad. The witness in each instance testified that the rule was in force while he worked on such road and when he left it. It was competent to show by parol from the actual knowledge and recollection of the witness the rule actually enforced while he was in the employment of another railroad and to use any edition of the company's rules to refresh his recollection. It was unnecessary to produce the

manuscript of the rules as written, or the book printed there-from.   Reasoning is illogical when it leads to an absurdity.

The court charged the jury, in part, as follows: "It is claimed on the part of the defendant that after 1895, under Mr. Beatty, he adopted and promulgated by giving notice to the employees, a verbal rule, to the effect that inspectors should not in the ordinary inspection go between cars or under cars.   If, however, it became their duty to go between or under cars, that then they should get another man and station him at or near the car for the purpose of protection.   That, I think, is in substance the claim of the defendant in that regard.   Mr. Beatty says that an inspector had no business under a car without protection, without protecting himself by putting a man on guard ; that he told them to protect themselves by having a man on guard to protect them. In the first place it will be on this evidence for you to say whether or not any such rule was, in fact, made and promulgated and in force during the time that Mr. Devoe was there at work; and, if so, whether or not it was a reasonable and proper rule, such a rule as the defendant, in the exercise of ordinary care for the purpose of reasonable protection of its employees, should have made.   That really involves the main question here on the question of negligence of this defendant. Was such a rule made ?   If so, was it a reasonably safe rule for the purpose of furnishing to the employees reasonable protection ?   It is said that the fact that it was not written is a circumstance to be considered.   That evidence is in the case. The simple fact, the fact alone, that the rule was not printed or written, does not make it invalid.   It is simply a circumstance for you to consider with all the other evidence in the case as to whether it was a proper and reasonable rule for the fair and reasonable protection of employees engaged in this class of business.   Upon the whole case that is a question for you to consider."

At the close of the charge the defendant excepted to that part which left " the question to the jury as to whether or not this rule which Mr. Beatty testified to was a proper and suffi-

cient rule with reference to the inspection of cars; claiming that obviously, if that rule had been regarded on this occasion this accident would not have happened, and that all that was required of the defendant was to have that kind of a rule." After taking other exceptions, not now material, the counsel for the defendant said : " And we except again to the proposition that it is for any one to say whether or not that rule was a reasonably safe and proper rule."

When the business of a master is such that the safety of one servant depends upon the way in which other servants do their work, it is his duty to make, promulgate and enforce reasonable and sufficient rules for the protection of the servant exposed to danger. The situation at the Syracuse station of the defendant was somewhat complicated at the time of the accident in question. There were many tracks, switches and branches. Between fifty and sixty trains came and went every day, and the car inspectors were required to inspect the wheels, running gear, couplings, safety chains and other appliances belonging to each car of each train. There was much movement of trains at the station from one track to another; cars were taken out of one train and put into others; shifting of various kinds was done; trains were made up, and while all this was going on other trains were constantly coming in and going out. The work of car inspection is dangerous and the necessity for rules to protect the inspectors so obvious as to be scarcely disputed. A rule known as No. 38 had been made and promulgated by the company in the following form : " A blue flag by day and a blue light by night, placed on the end of the car, engine or train, denote that workmen are at work under or about the car, engine or train. The car, engine or train thus protected must not be coupled to, or moved, or other cars placed in front of it, until the blue signal is removed by the person who placed it." This is the rule, so amended as to adapt it to passenger trains, which was considered by us the first time that the *Warn* case was before us. (*Warn* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 109.) Upon the first appeal we held that the rule as it

then stood did not apply to passenger trains stopping at a station, but to cars or trains on sidings or in a yard. Subsequently the same case came before us upon a different record and a verdict for the plaintiff was sustained. (169 N. Y. 572.) The rule as quoted above was the only rule upon the subject made or promulgated by the company, but it is conceded that it was never enforced. It is also conceded that if it had been enforced on the occasion in question the plaintiff's intestate would not have been injured. Several inspectors had been injured at the Syracuse station while in the discharge of their duties prior to the accident in question; others had narrowly escaped injury and many complaints had been made by employees as to the danger attending the work of inspection.

While the defendant was without any printed rule upon the subject, except the one quoted, which was a dead letter because it was not enforced, its foreman of the car department testified that he, without instructions from the company, or from any superior officer, had established a practice by verbal directions to certain employees which in his opinion afforded ample protection. According to his testimony, which was not corroborated, he required the inspectors not to go under the cars to inspect, and whenever they had any repairing to do which compelled them to go under, to notify the depot master, whereupon he was to inform the engineer of the shifting engine and the engineer in charge of the engine of the train not to move their engines without orders. He further required that the entire crew of the train be notified that the inspectors were at work and that one man should be stationed by the engine to take signals and another at the end of the car being repaired to give warning in case of danger. According to the practice, as testified to by him, and there was no other evidence for the defendant upon the subject of rules, even if repairs were to be made between or under the cars, which would take but a single minute, such as screwing on a nut or tightening a chain, still this tedious and indirect process was to be resorted to. At times there would be difficulty in promptly finding the depot master, or in his absence

his representative. At times, also, it would be difficult to find men not otherwise engaged to act as watchers at the engine and at the car under reparation. The delay and difficulty in enforcing the rule was a temptation to employees to disregard it and run the risk. It lacked the simplicity and adequacy of the blue signal rule which, as it was shown, is in force on six leading railroads. The existence of that unenforced rule, printed in the books furnished to engineers and others, tended to produce confusion. A rule to protect employees should be so framed as to guard them to a reasonable extent against the consequences, not only of the carelessness of co-employees, but of their own carelessness also. It is known of all that men are prone to run risks in order to save time and trouble, especially when the risk lasts but a moment and the precaution necessary to guard against it requires a considerable period of time.

The duty of a master in making rules is measured by the law of ordinary diligence. That law varies with the situation, for what would be ordinary diligence under one set of facts would be negligence in another. If, however, under the circumstances of a particular case, the master has met the obligation of ordinary diligence in making and enforcing a rule he is free from liability, even if some other rule would have been safer and better. The law requires him to make and promulgate reasonably safe and proper rules, and if he does so he is not liable, even if he might have made safer and more effective rules. If a rule is actually made the question still remains whether it is proper and sufficient under the circumstances, for due diligence is not satisfied by an insufficient and inadequate rule. There is an essential distinction between rules made by a master for his own protection and the regulation of his business in his own interest, and those made for the protection of his servants, for in the one case the sufficiency affects no one but himself, while in the other the lives and limbs of his servants are involved. Hence, it has been held that the reasonableness of rules to regulate the purchase and surrender of tickets, the checking of baggage, ingress and

.egress from trains and the like, is a question of law. ( *Vedder* v. *Fellows*, 20 N. Y. 126; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31, 44.) A common carrier is under no obligation to make any rules upon such subjects, as no interest except its own would be affected by the omission. In this case, however, it was the duty of the defendant to make rules, as the jury properly found, for the safety of its employees was involved. There was no discretion, as in the cases relied upon by the defendant, to make rules or not as it saw fit. The reasonableness of rules made for the protection of the master's interest is quite different from the sufficiency of rules made to protect human life. The former involves simple inconvenience to the public, if the rules are unreasonable, while the latter involves the lives of the employees.

It may be that where the situation is simple and entirely free from complications, the sufficiency of rules made even to protect employees would be a question of law. When, however, as in this case, the situation was complicated owing to the large number of tracks and trains, and the rule was not only verbal, leaving its enforcement to the unaided recollection of a simple announcement, but the delay in finding the depot master, the difficulty of getting men to act as watchmen, he danger of taking them from other employment and the temptation to run a momentary risk rather than to consume time in order to be safe, were so great that the question of the sufficiency of the verbal instructions was for the jury. (*Abel* v. *D. & H. Canal Co.*, 103 N. Y. 581; *S. C.*, 128 N. Y. 662, 667; *Ford* v. *L. S. & M. S. Ry. Co.*, 124 N. Y. 493; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582, 585; *Doing* v. *N. Y., O. & W. Ry. Co.*, 151 N. Y. 579; *Dowd* v. *N. Y., O. & W. Ry. Co.*, 170 N. Y. 459.)

It is said that it is inexpedient to leave such questions to the jury, as different juries might find diverse verdicts upon the same evidence and thus there would be no uniformity. The objection is not without reason, but it is not controlling. It applies with equal force to the subject of the necessity for rules, which is clearly for the jury when the evidence is suffi-

cient to raise the question. What is reasonable and proper under a complicated state of facts, permitting diverse inferences, is a question of fact.

After examining all the exceptions which are open to review by us, we find none to justify the reversal by the Appellate Division. Their order should, therefore, be reversed and that of the trial court affirmed, with costs in all courts.

Haight, J. (dissenting). But one question of law is presented by this appeal that requires consideration here. The act of negligence charged against the defendant is that of a failure to make, promulgate and enforce reasonable and proper rules for the protection of its car inspectors while they were engaged in the discharge of their duties. The company had established a rule, which was printed in its book of rules, known as the blue light and blue flag rule, the flag being used by day and the light by night, by posting one upon the engine and the other upon the rear of the train for the purpose of warning persons that inspectors were engaged upon the train. It was conceded, however, that this rule was not enforced in the station at Syracuse; but instead thereof, the defendant's foreman, Beatty, in charge of the inspectors at that station, testified that he had established a rule to the effect that notice should be given to the engineer or person in charge of the engine attached to the train and to any other person present having charge of the train, if it was necessary for the inspectors to go underneath the cars, and at the same time to post a man to watch and give them notice of the approach of danger. This rule he says was communicated orally to all of the inspectors, including the deceased, with whom the foreman was well acquainted and a friend, and whom the foreman had warned on a number of occasions to protect himself by conforming to the rule when he went under trains. The question as to whether this rule was in fact made by the foreman and communicated to the inspectors was properly submitted to the jury. The jurors were then instructed that, in case they found such a rule was in fact

made and promulgated, then they were to determine " whether or not it was a reasonable and proper rule, such a rule as the defendant in the exercise of ordinary care for the purpose of reasonable protection of its employees should have made." To this charge an exception was taken by the defendant.

It will thus be seen that the jury was permitted to find that the rule was not reasonable or proper, and, therefore, the defendant was liable although the rule had in fact been made and promulgated. I think this was erroneous. The question as to whether a rule is reasonable and proper is a question of law for the court and not for the jury. If it was a question for the jury, one panel might find the rule to be reasonable and proper and the next panel might upon the next day find the rule to be unreasonable and improper. This will not do. The defendant had the right to have the court determine whether or not the rule was reasonable and proper and not the jury.

This question was first considered in this court in the case of *Vedder* v. *Fellows* (20 N. Y. 126). Strong, J., in delivering the opinion of the court, after stating that the reasonableness of a rule was a question of law for the court rather than one of fact for the jury, gave his reasons, therefor, as follows : " Ordinarily, jurors are not aware, nor can they readily be made aware, of all the reasons calling for the rule. They are apt to listen readily to any allegation of injuries on railways. What one jury might deem an inconvenient rule another might approve as judicious and proper. There would be no uniformity. Ordinarily, the managers of railways are much better qualified than jurors to ascertain and weigh the exigencies which call for any rule, and if it should be productive of some inconvenience, to compare that with the evil to be prevented or the good to be produced by its adoption. If the question should be deemed one of law there would be eventual uniformity, as any diversity of sentiment in the courts below would be finally harmonized in the court of dernier resort."

In the case of *Avery* v. *N. Y. C. & H. R. R. R. Co.* (121 N. Y. 31, 44), Judge Gray, in speaking for the court, says : " The question of the reasonableness of such regulation was

one of law and not one for the jury to pass upon," citing the case of *Vedder* v. *Fellows*. (See, also, 3 Thompson on Negligence [2d ed.], § 3107, and cases there cited.)

Of course, in cases where the facts with reference to the nature and contents of the rule are not clearly established, or are to be determined from controverted facts, the question must be submitted to the jury as to what the rule promulgated was, under proper instructions from the court as to what is necessary to constitute a reasonable and proper rule. (*Sullivan* v. *N. Y. & R. Cement Co.*, 119 N. Y. 348, 355; *Abel* v. *D. & H. Canal Co.*, 103 N. Y. 581; *S. C.*, 128 N. Y. 662; *Ford* v. *L. S. & M. S. Ry. Co.*, 124 N. Y. 493.)

In this case, as we have seen, the court submitted to the jury the question as to whether the rule testified to by the witness Beatty was, in fact, made. There was no controversy with reference to the terms or contents of the rule. There, consequently, was no other question of fact to submit to the jury in reference thereto.

It is now contended that the situation at this depot was complicated, in view of the fact that there were numerous tracks and trains; that the rule was verbal and that the inspectors would be subjected to delay in finding a person to act as a watchman while they were under the cars, and that the temptation to take a momentary risk rather than to comply with the rule was so great as to render the sufficiency of the rule a question for the jury. I cannot indorse this reasoning. A verbal rule is as good as a printed rule, if it is thoroughly and well understood. It appears that the decedent had been often instructed with reference to this rule, and had been frequently charged to protect himself in accordance with its requirements. It appears to be conceded that the blue flag and the blue light rule was a sufficient and proper one, had it been enforced in this depot; and yet there would have been the same complications with reference to the number of tracks and trains to be looked after, under an enforcement of that rule. In case the inspectors found it necessary to go underneath a train, the same inconvenience

would follow as that of procuring a man to stand on watch. They would have to procure flags or lamps, perhaps from the farther end of the depot, where the lamps were kept, and place them upon the train before doing their work. This might induce a similar temptation, to take a momentary risk rather than to subject themselves to the trouble of hunting up and procuring a lamp. It appears to me that the rule, as testified to by Beatty, was a reasonable and proper rule, and that, had it been adhered to by the decedent, he would not have been injured. A blue light or a blue flag might escape observation by trainmen intently occupied in the discharge of their own duties, but if the persons in charge of the train had been notified that inspectors were working underneath the cars, and at the same time a person had been placed on guard to watch and warn as to approaching danger, it certainly would have proved as effective in shielding the inspectors from danger as the blue flag or the blue light rule.

The reversal of the judgment entered upon the verdict of the jury in this case was made upon questions of law only, the Appellate Division certifying that it had examined the facts " and found no error therein." At the end of the order appear the words, " All concur." A question has arisen as to whether, by this form of certificate, the Appellate Division intended to unanimously affirm the facts as found by the verdict, so as to prohibit this court from a review of the question as to whether there was any evidence to sustain the verdict, but that question does not arise in this case and it is not, therefore, necessary to now determine it; for, unquestionably, the certificate is sufficient to authorize this court to examine and determine the other questions of law involved in the case.

The order of the Appellate Division should be affirmed and judgment absolute ordered in favor of the defendant, with costs, upon the stipulation.

BARTLETT, MARTIN and WERNER, JJ., concur with VANN, J.; PARKER, Ch. J., concurs with HAIGHT, J.; GRAY, J., not sitting.

Order reversed, etc.