At the Syracuse station of the defendant the track of the Rome, Watertown Ogdensburg branch of its system of railroads enters from the north and makes a connection in the form of a "Y" with track No. 6 which runs east and west. On the 19th of July, 1899, at about noon, train No. 10, consisting of nine or ten cars, entered the station from the north, and after standing upon track No. 6 for a few minutes, was pulled easterly so as to clear the switch at the point of the "Y" and enable another train from the north, known as No. 4, to enter upon the same track and discharge its passengers. Train No. 10 was so long that when it was moved east far enough to clear the point of the "Y," it extended across Franklin street, running north and south, and interrupted travel. After train No. 4 entered, its engine was uncoupled and proceeded westerly to the engine house. That train consisted of four cars, the most westerly being a baggage car, which was followed by a smoker and two passenger coaches. The regular engine of train No. 10 had also been detached, and a switch engine, coupled to the easterly end, backed it westerly until within ten or fifteen feet of train No. 4 when it stopped for a short time and then backed on west to couple with that train. The decedent at this time was between the two passenger coaches of train No. 4 and when the two trains came together his head was caught and he was injured so that he died in a short time.
The jury found for the plaintiff, but upon appeal to the Appellate Division all the justices united in reversing the *Page 5 
judgment, and in their order certified that they reversed "upon questions of law only, the facts having been examined and no error found therein." As the evidence supports the verdict, there is nothing open to review by us, other than the exceptions relating to the evidence and the charge, and unless one or more of these exceptions is sufficient to justify the reversal by the Appellate Division, it is our duty to reverse their determination and affirm the judgment of the trial court. (Ayres v.Delaware, L. W.R.R. Co., 158 N.Y. 254, 258.)
Several witnesses who had been employed as inspectors upon other railroads were called by the plaintiff to show what rules had been provided by the companies operating those roads for the protection of car inspectors. In each instance a book containing the rules of the particular company for which the witness had worked was produced by the plaintiff and shown to him. In several instances it did not appear by the date upon the title page whether it purported to be the edition in force while he had so worked or not, but he testified that the rule appearing in the book upon the subject was in force, if not during the entire period of his employment, at least during the last part thereof. To the question whether that rule was in force upon the railroad in question while the witness was employed by it, the defendant objected upon the ground that it was not the best evidence, and now insists that the plaintiff should have produced "the actual edition of the book of rules in force during the term of the witness' employment."
We think the exception to the rulings which allowed such questions to be answered raises no error. It was competent to show any rule relating to the subject recently in force upon another railroad. The witness in each instance testified that the rule was in force while he worked on such road and when he left it. It was competent to show by parol from the actual knowledge and recollection of the witness the rule actually enforced while he was in the employment of another railroad and to use any edition of the company's rules to refresh his recollection. It was unnecessary to produce the *Page 6 
manuscript of the rules as written, or the book printed therefrom. Reasoning is illogical when it leads to an absurdity.
The court charged the jury, in part, as follows: "It is claimed on the part of the defendant that after 1895, under Mr. Beatty, he adopted and promulgated by giving notice to the employees, a verbal rule, to the effect that inspectors should not in the ordinary inspection go between cars or under cars. If, however, it became their duty to go between or under cars, that then they should get another man and station him at or near the car for the purpose of protection. That, I think, is in substance the claim of the defendant in that regard. Mr. Beatty says that an inspector had no business under a car without protection, without protecting himself by putting a man on guard; that he told them to protect themselves by having a man on guard to protect them. In the first place it will be on this evidence for you to say whether or not any such rule was, in fact, made and promulgated and in force during the time that Mr. Devoe was there at work; and, if so, whether or not it was a reasonable and proper rule, such a rule as the defendant, in the exercise of ordinary care for the purpose of reasonable protection of its employees, should have made. That really involves the main question here on the question of negligence of this defendant. Was such a rule made? If so, was it a reasonably safe rule for the purpose of furnishing to the employees reasonable protection? It is said that the fact that it was not written is a circumstance to be considered. That evidence is in the case. The simple fact, the fact alone, that the rule was not printed or written, does not make it invalid. It is simply a circumstance for you to consider with all the other evidence in the case as to whether it was a proper and reasonable rule for the fair and reasonable protection of employees engaged in this class of business. Upon the whole case that is a question for you to consider."
At the close of the charge the defendant excepted to that part which left "the question to the jury as to whether or not this rule which Mr. Beatty testified to was a proper and sufficient *Page 7 
rule with reference to the inspection of cars; claiming that obviously, if that rule had been regarded on this occasion this accident would not have happened, and that all that was required of the defendant was to have that kind of a rule." After taking other exceptions, not now material, the counsel for the defendant said: "And we except again to the proposition that it is for any one to say whether or not that rule was a reasonably safe and proper rule."
When the business of a master is such that the safety of one servant depends upon the way in which other servants do their work, it is his duty to make, promulgate and enforce reasonable and sufficient rules for the protection of the servant exposed to danger. The situation at the Syracuse station of the defendant was somewhat complicated at the time of the accident in question. There were many tracks, switches and branches. Between fifty and sixty trains came and went every day, and the car inspectors were required to inspect the wheels, running gear, couplings, safety chains and other appliances belonging to each car of each train. There was much movement of trains at the station from one track to another; cars were taken out of one train and put into others; shifting of various kinds was done; trains were made up, and while all this was going on other trains were constantly coming in and going out. The work of car inspection is dangerous and the necessity for rules to protect the inspectors so obvious as to be scarcely disputed. A rule known as No. 38 had been made and promulgated by the company in the following form: "A blue flag by day and a blue light by night, placed on the end of the car, engine or train, denote that workmen are at work under or about the car, engine or train. The car, engine or train thus protected must not be coupled to, or moved, or other cars placed in front of it, until the blue signal is removed by the person who placed it." This is the rule, so amended as to adapt it to passenger trains, which was considered by us the first time that the Warn
case was before us. (Warn v. N.Y.C. H.R.R.R. Co., 157 N.Y. 109. ) Upon the first appeal we held that the rule as it *Page 8 
then stood did not apply to passenger trains stopping at a station, but to cars or trains on sidings or in a yard. Subsequently the same case came before us upon a different record and a verdict for the plaintiff was sustained. (169 N.Y. 572.) The rule as quoted above was the only rule upon the subject made or promulgated by the company, but it is conceded that it was never enforced. It is also conceded that if it had been enforced on the occasion in question the plaintiff's intestate would not have been injured. Several inspectors had been injured at the Syracuse station while in the discharge of their duties prior to the accident in question; others had narrowly escaped injury and many complaints had been made by employees as to the danger attending the work of inspection.
While the defendant was without any printed rule upon the subject, except the one quoted, which was a dead letter because it was not enforced, its foreman of the car department testified that he, without instructions from the company, or from any superior officer, had established a practice by verbal directions to certain employees which in his opinion afforded ample protection. According to his testimony, which was not corroborated, he required the inspectors not to go under the cars to inspect, and whenever they had any repairing to do which compelled them to go under, to notify the depot master, whereupon he was to inform the engineer of the shifting engine and the engineer in charge of the engine of the train not to move their engines without orders. He further required that the entire crew of the train be notified that the inspectors were at work and that one man should be stationed by the engine to take signals and another at the end of the car being repaired to give warning in case of danger. According to the practice, as testified to by him, and there was no other evidence for the defendant upon the subject of rules, even if repairs were to be made between or under the cars, which would take but a single minute, such as screwing on a nut or tightening a chain, still this tedious and indirect process was to be resorted to. At times there would be difficulty in promptly finding the depot master, or in his absence *Page 9 
his representative. At times, also, it would be difficult to find men not otherwise engaged to act as watchers at the engine and at the car under reparation. The delay and difficulty in enforcing the rule was a temptation to employees to disregard it and run the risk. It lacked the simplicity and adequacy of the blue signal rule which, as it was shown, is in force on six leading railroads. The existence of that unenforced rule, printed in the books furnished to engineers and others, tended to produce confusion. A rule to protect employees should be so framed as to guard them to a reasonable extent against the consequences, not only of the carelessness of co-employees, but of their own carelessness also. It is known of all that men are prone to run risks in order to save time and trouble, especially when the risk lasts but a moment and the precaution necessary to guard against it requires a considerable period of time.
The duty of a master in making rules is measured by the law of ordinary diligence. That law varies with the situation, for what would be ordinary diligence under one set of facts would be negligence in another. If, however, under the circumstances of a particular case, the master has met the obligation of ordinary diligence in making and enforcing a rule he is free from liability, even if some other rule would have been safer and better. The law requires him to make and promulgate reasonably safe and proper rules, and if he does so he is not liable, even if he might have made safer and more effective rules. If a rule is actually made the question still remains whether it is proper and sufficient under the circumstances, for due diligence is not satisfied by an insufficient and inadequate rule. There is an essential distinction between rules made by a master for his own protection and the regulation of his business in his own interest, and those made for the protection of his servants, for in the one case the sufficiency affects no one but himself, while in the other the lives and limbs of his servants are involved. Hence, it has been held that the reasonableness of rules to regulate the purchase and surrender of tickets, the checking of baggage, ingress and *Page 10 
egress from trains and the like, is a question of law. (Vedder
v. Fellows, 20 N.Y. 126; Avery v. N.Y.C. H.R.R.R. Co.,121 N.Y. 31, 44.) A common carrier is under no obligation to make any rules upon such subjects, as no interest except its own would be affected by the omission. In this case, however, it was the duty of the defendant to make rules, as the jury properly found, for the safety of its employees was involved. There was no discretion, as in the cases relied upon by the defendant, to make rules or not as it saw fit. The reasonableness of rules made for the protection of the master's interest is quite different from the sufficiency of rules made to protect human life. The former involves simple inconvenience to the public, if the rules are unreasonable, while the latter involves the lives of the employees.
It may be that where the situation is simple and entirely free from complications, the sufficiency of rules made even to protect employees would be a question of law. When, however, as in this case, the situation was complicated owing to the large number of tracks and trains, and the rule was not only verbal, leaving its enforcement to the unaided recollection of a simple announcement, but the delay in finding the depot master, the difficulty of getting men to act as watchmen, he danger of taking them from other employment and the temptation to run a momentary risk rather than to consume time in order to be safe, were so great that the question of the sufficiency of the verbal instructions was for the jury. (Abel v. D. H. Canal Co., 103 N.Y. 581;S.C., 128 N.Y. 662, 667; Ford v. L.S. M.S. Ry. Co.,124 N.Y. 493; Berrigan v. N.Y., L.E. W.R.R. Co., 131 N.Y. 582,585; Doing v. N.Y., O. W. Ry. Co., 151 N.Y. 579; Dowd v.N.Y., O. W. Ry. Co., 170 N.Y. 459.)
It is said that it is inexpedient to leave such questions to the jury, as different juries might find diverse verdicts upon the same evidence and thus there would be no uniformity. The objection is not without reason, but it is not controlling. It applies with equal force to the subject of the necessity for rules, which is clearly for the jury when the evidence is sufficient *Page 11 
to raise the question. What is reasonable and proper under a complicated state of facts, permitting diverse inferences, is a question of fact.
After examining all the exceptions which are open to review by us, we find none to justify the reversal by the Appellate Division. Their order should, therefore, be reversed and that of the trial court affirmed, with costs in all courts.