## LANE v. NEW YORK CENT. & H. R. R. CO.

### (Supreme Court, Appellate Division, Fourth Department.   July 6, 1905.)

**1. SERVANT'S INJURIES—NEGLIGENCE—QUESTION FOR JURY.**

In an action for injuries to a servant while cleaning out the ash pan of a locomotive, owing to the engine being moved without warning, *held* that the question whether defendant ought to have apprehended that an engine might be put in motion under the circumstances, unless there was some rule to prevent it, was one for the jury.

**2. SAME—CARE REQUIRED OF DEFENDANT.**

Defendant had not protected plaintiff from being injured by the fact that he was supplied with a lantern which—it being in the nighttime—was placed by the side of the engine while he was under it; it appearing that it was an ordinary white light, and that there was no rule or practice which made it a warning, and that other employés, with similar lights, were accustomed to leave them in various places.

**3. SAME—PROTECTION OF SERVANT—RULES.**

The fact that engineers were required by rule to see that the engine was in good working order, and furnished with necessary stores and supplies and a full set of signals, did not show a protection of plaintiff, on the theory that an engineer complying with the rule would have been compelled to walk around his engine, which would have led to the discovery of plaintiff's situation.

**4. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action for injuries to a servant, owing to the moving of a locomotive while he was beneath it, cleaning out the ash pan, the question whether plaintiff understood that defendant had not prescribed any rules to prevent the carelessness of servants in moving an engine, and continued to work with such knowledge, was for the jury.

**5. SAME—ASSUMPTION OF RISK.**

A servant who had been employed for years in cleaning out the ash pans of locomotives, which necessitated his going beneath them, assumed the risk that, in the absence of rules or regulations, some employé might carelessly set an engine in motion while he was under it.

Williams and Stover, JJ., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Frank Lane against the New York Central & Hudson River Railroad Company.   From a judgment in favor of defendant, plaintiff appeals.   Reversed.

See 86 N. Y. Supp. 947.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

N. F. Breen, for appellant.
Henry Purcell, for respondent.

HISCOCK, J.   While the plaintiff was in the employ of defendant, in December, 1900, and engaged, at night, under one of its locomotives, in hoeing out the ash pan thereof, somebody improperly started the locomotive, and caused serious injuries to him.   He seeks to maintain this action upon the ground that defendant was guilty of negligence in not prescribing some rule which would have prevented the locomotive from being put in motion while he was at work under it.   The case once before has been in this court upon

an appeal by the defendant from a judgment which had been obtained against it, and which judgment we reversed upon the grounds that improper evidence had been received as to the necessity of rules, and that the trial judge had committed error in his charge or refusal to charge in connection therewith. A majority of this court did not express any opinion upon the merits of the action. In our opinion, the present appeal is well taken, and the judgment must be reversed.

It is not claimed that the facts were materially changed upon the second trial, and they are so familiar that we may content ourselves with a brief and general statement of them: Defendant had a specified track at Watertown, upon which it was accustomed to place engines for the purpose of cleaning out their ash pans. There was no pit in this track, as in similar tracks at other places. Plaintiff had been engaged in this and other work for the defendant for several years. The custom was for him to go with a hostler to an engine, and after the latter had shaken down the fire the plaintiff would hoe out the pan. Upon occasions (and this was so upon the night in question) in the neighborhood of 30 engines would be thus shaken down and cleaned out during the night. The hostler would ordinarily or frequently finish his work before the "hoer" had finished his, and would then go to some other engine or place, leaving the latter at work under the engine and alone. Different persons—sometimes the hostler, sometimes the fireman, sometimes an engineer, and sometimes a strange crew—would come into the yard and take away one of these engines. Upon the occasion involved, while plaintiff was at work under the engine, the hostler left it, and a crew came into the yard, took possession of the engine, and set it in motion. A number of similar mistakes in improperly putting an engine in motion had happened before this one, but there is no testimony to show that plaintiff had heard of any of these accidents, and his own testimony negatives that idea.

Common observation and foresight, as well as actual experience, indicated that, in the absence of any precautions to prevent it, such an accident as overtook the plaintiff might happen. In view of the large number of engines which were cleaned nightly in defendant's yard, and in view of the number of different persons who were accustomed to come there and set them in motion, a jury might say that defendant, in the exercise of reasonable care, ought to have apprehended that some engine was liable to be put in motion while the man was at work thereunder, unless there was some rule to prevent it. This certainly might be said by a jury in view of what had already happened at the time the plaintiff was injured. In Devoe v. N. Y. C. & H. R. R. Co., 174 N. Y. 1, 66 N. E. 568, it was said:

"When the business of a master is such that the safety of one servant depends upon the way in which other servants do their work, it is his duty to make, promulgate, and enforce reasonable and sufficient rules for the protection of the servant exposed to danger. * * * The duty of a master in making rules is measured by the law of ordinary diligence. That law varies with the situation, for what would be ordinary diligence under one set of facts would be negligence in another. If, however, under the circumstances of a particular case, the master has met the obligation of ordinary diligence

in making and enforcing a rule, he is free from liability, even if some other rule had been safer and better. The law requires him to make and promulgate reasonably safe and proper rules, and if he does so he is not liable, even if he might have made safer and more effective rules. ·If a rule is actually made, the question still remains whether it is proper and sufficient under the circumstances, for due diligence is not satisfied by an insufficient and inadequate rule."

It is urged that any obligation resting upon defendant to thus protect plaintiff from being injured while at work had been met.

First, our attention is called to the fact that he was supplied with a lantern, which was placed by the side of the engine while he was at work thereunder, and which, it is said, ought to have been a sufficient notice to the man who put the engine in motion that somebody was at work there. It appears in answer to this contention, however, that the light with which plaintiff was supplied was an ordinary white light, for simple illuminating purposes, and that there was no rule or practice which made it a warning as it sat beside the engine, but that other employés, furnished with like lights, were accustomed to leave them upon the ground in various places throughout the yard, where they gave no indication such as would be applicable to this case.

Secondly, it is said that there was a practice upon the part of the engineers to ring the bell upon an engine before starting it, and that, if that had been done, plaintiff would have heard it, and escaped injury. Without discussing whether the ringing of the bell would have given him time to escape from under the engine, it is sufficient to say that the evidence indicates that this practice was not followed in the yards.

Finally, our attention is called to a written rule which it is claimed governed this case. This rule reads that enginemen "must report for duty at the appointed time; see that the engine is in good working order and furnished with necessary stores and supplies and a full set of signals"; and counsel reasons that, if the engineer had done this, he would have been compelled to walk around his engine, and this would have led him to the discovery of plaintiff. This reasoning as to what might have happened if the engineer had done what it is assumed he did not do is somewhat speculative, at least. But we think it quite clear that this rule related simply to an examination of the working condition of the engine, and that it cannot be cited as a discharge of defendant's duty to protect plaintiff because perhaps its full observance indirectly and incidentally might have accomplished that result. It seems manifest that the authority of a rule and its binding effect upon a large number of employés must depend in part upon an understanding of the particular object for which it is prescribed, and of the dangers which may ensue from its disobedience. It is quite a general principle, in passing upon the negligence or misconduct of a man, that he is only to be charged with the natural consequences of his act. A servant who understood that the object sought by a rule was of comparatively insignificant consequence very naturally might be less conscientious in his obedience than he would be if serious re-

sults might be apprehended from his failure to obey. In this particular case an employé might forget or willfully disobey the requirement for the examination of the working condition of the engine, who would do neither of these things in the presence of a rule which fairly and directly apprised him that there was liable to be at work under the engine another employé, whose safety must be guarded before putting the machinery in motion. So, too, such a compliance with the rule quoted as would subserve the end of insuring the proper working condition of the locomotive would not at all meet the necessity of protecting plaintiff. An engineer might reasonably prefer some other spot in the yard for his examination. There would be no objection to this so far as the real purpose of the rule was concerned, but such slight movement would be sufficient to destroy any benefit of protection to plaintiff. So we think that the language employed was not designed, and cannot be so extended in construction and application as, to include the situation presented by this accident.

Lastly, the counsel for the appellant argues that, even if the defendant was guilty of negligence in omitting to prescribe regulations for the protection of plaintiff, the latter knew or ought to have known of this omission, and therefore assumed the risks resulting therefrom. And the trial justice, in misapprehension of what this court held and said upon the former appeal, granted the motion for a nonsuit not only upon the ground that the business was not one which required the promulgation of rules for the safety of the employés, but for the further reason that plaintiff "assumed the risk." Of course, plaintiff by reason of his long experience, did assume the obvious risks of his employment, and the dangers which were naturally and necessarily incidental thereto. We may concede that amongst these he took the chance that, in the absence of rules or regulations to prevent it, some employé might be careless and set an engine in motion while he was at work under it. But the precise question is whether we can say, as matter of law, that he understood that defendant had not prescribed any rules or regulations to prevent or minimize the carelessness of employés, and continued to work with this knowledge, and under the assumption of the perils which flowed therefrom. The case of Dowd, as Adm'x, etc., v. N. Y., etc., R. Co., 170 N. Y. 459, 63 N. E. 541, finally and explicitly established the doctrine that the assumption of risks by an employé, and the waiver of any right of action against the employer on account thereof, rests upon implied contract, and is entirely distinct in principle from the doctrine of contributory negligence; that the burden rests upon the employer of establishing knowledge and understanding by the employé of the risk, and the resulting assumption of its dangers, by continuance in employment. As bearing upon the precise issue whether plaintiff had knowledge of the lack of rules or system under which he worked, we have his direct and positive testimony that he did not know that the employer had taken no precautions by rules to prevent such carelessness of an employé as resulted in

his injury. We are asked, however, to say as matter of law, that this evidence may be disregarded, and that we must believe that plaintiff, from the length of his employment, necessarily did know that no rules had been adopted. We do not think we can do this. The knowledge whether adequate instructions had or had not been given to the people who came down in the yard to take engines would not necessarily come to plaintiff. He knew by experience that the hostler was liable to leave the locomotive while he was still at work under it, but it did not follow from this that he knew that the defendant had never, either by printed rules, verbal instructions, or practice, notified the engineer who came into the yard that he must examine to see whether anybody was at work under it. Apparently defendant's yard at Watertown was a large one, with many employés and a large amount of work; and it might very well happen that the plaintiff, working in one grade of employment, would not understand the duties and instructions of an engineer, working in another one. It is somewhat instructive, as bearing upon this question, that the learned counsel for the appellant, after hearing and studying all of the evidence which has been carefully gathered upon this subject, insists that there was a printed rule and a practical custom which applied to the situation presented in this case, and which required the engineer, before starting the engine, either to give a signal by whistle, or to make an examniation which would have disclosed plaintiff's whereabouts. We have found it proper to give careful consideration to the argument which he has made, before deciding that he was wrong; and we do not think that we should hold that plaintiff, employed in a very subordinate capacity, was bound to know, as matter of law, that there was no basis for the claim now made in this respect.

Without passing upon any of the other questions raised, we think that the judgment should be reversed.

Judgment reversed and a new trial granted, with costs to appellant to abide event. All concur, except WILLIAMS and STOVER, JJ., who dissent.