and this was upon the theory that the covenant to refund was collateral and did not run with the land.

The learned justice of the Municipal Court made a proper disposition of the case, and the judgment must be affirmed, with costs. All concur.

---

(119 App. Div. 32)

## DAYTON v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. April 19, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a guard caused by the collision of two elevated trains, evidence examined, and *held* to authorize submitting to the jury the question of defendant's negligence in failing to promulgate and enforce a rule requiring some one to go back on the track and warn approaching trains.

Appeal from Trial Term, Kings County.

Action by Warren Dayton, Jr., against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

I. R. Oeland, for appellant.
Samuel Evans Maires (Samuel T. Maddox, Jr., on the brief), for respondent.

HOOKER, J.   The plaintiff was a guard on an elevated train operated by the defendant on Fifth avenue, in the borough of Brooklyn. The train on which he was serving became stalled between Twenty-Ninth and Thirtieth streets, and the lights went out, except as to two small red lights shining from the end of the rear car. It was dark, but clear. Another train coming from Thirty-Sixth street ran into the rear of the stalled train with such force that the plaintiff, who was not on the rear car, was precipitated to the street below and received injuries of a very serious character. The motorman of the on-coming train was killed, but from the management of his train it is a fair inference that he did not see the stalled train. On the stopping of the train, the rear brakeman, standing on the rear platform, swung one of the red lights back and forth across the track for the evident purpose of warning other trains. The track runs on a downgrade from Thirty-Sixth street to Twenty-Ninth street.

The plaintiff urged that the defendant's rules were insufficient to protect employés from the effects of rear-end collisions such as this. The rules that were in force imposed upon the conductor of trains that were compelled to stop for any unusual reason the duty of protection by signals displayed at the rear of the train, and charged all motormen with the duty of a high degree of watchfulness. The plaintiff suggests, however, that the defendant was negligent in not promulgating and enforcing a rule requiring some person to go back from the rear of a stationary train far enough so that a warning from him

would prevent a collision of this sort. It appears from the evidence that upon all steam surface railroads a rule obtains which requires the rear brakeman to go back along the track a given distance from a train which is stalled for the purpose of stopping following trains. While some of the plaintiff's witnesses testify that similar rules have obtained in the operation of elevated railroads, it is not clear that such is the case. The defendant's witness Smith testified, and it must be apparent, that there is a difference between the operation of an elevated railroad and that of an ordinary steam surface road as to speed, as to the class of trains, as to the method of handling trains, as to the frequency with which trains are run, and as to the character of the service performed. Ordinary diligence measures the duty of the master to make rules; and, generally speaking, it is for the jury to determine whether the master has discharged that duty where the situation is complicated. Devoe v. N. Y. C. & H. R. R. R. Co., 174 N. Y. 1, 66 N. E. 568, and cases there cited. It is there said:

"What is reasonable and proper, under a complicated state of facts, permitting diverse inferences, is a question of fact."

The situation in this case was complicated. Trains were running frequently, if not under high speed. There was a sharp grade downward in the direction in which the trains were running. The night was dark, though clear. The lights on the stalled train were either entirely or almost all extinguished, except two red lights, which some of the witnesses describe as very dim. The lights of the city were to be seen, and might easily be confused with what were left of the lights on the train. The general business of operation was inherently dangerous. Under the circumstances, the question of negligence in the failure to promulgate and enforce a rule requiring some one to go back on the track and warn approaching trains was for the jury.

The judgment should be affirmed, with costs. All concur.