## JOHNSON v. PRINCE LINE, Limited.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DUTY TO PROMULGATE RULES —PROTECTION OF SERVANT FROM NEGLIGENCE OF FELLOW SERVANTS.

When the business of the master is such that the safety of one servant depends on the way in which other servants do their work, it is his duty to make, promulgate, and enforce reasonable and sufficient rules for the protection of the servant exposed to danger.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 283.]

2. SAME—ABSENCE OF FELLOW SERVANT—EVIDENCE.

A shipowner cannot be deemed negligent in having failed to promulgate a rule requiring an extra man to be present to take the place of one tem-

porarily absent during the operation of a winch used in lowering freight into the hold, merely because a servant in the hold was injured during and because of the absence of one of the men usually present tending the winch, where there is no evidence that such absence had ever occurred before, or that any similar accident had ever happened, and no evidence that any other employer had made or enforced such a rule, or that the shipowner had had any reason to anticipate that one of its employés would abandon his work to get a drink as the absent employé did, or that there was any reason to anticipate danger to an employé in the temporary absence of one of the men tending the winch.

Appeal from Trial Term.

Action by Peter Johnson against the Prince Line, Limited. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, RICH, MILLER, and GAYNOR, JJ.

George Gordon Battle (Roger B. Wood, on the brief), for appellant. Joseph Rosenzweig, for respondent.

WOODWARD, J. This case, with but slight changes in the evidence, comes here on appeal, presenting the same question which was raised upon a former appeal. 104 App. Div. 157, 93 N. Y. Supp. 273. The question is whether there was evidence to go to the jury tending to show negligence on the part of the defendant in not promulgating rules to govern the operation of a winch on board the defendant's ship. The general facts are so fully stated in the former opinion that it does not appear necessary to restate them here; the only material change being that while the plaintiff, on the former trial, testified that he did not stand under the fall to do his work, he now states that he did stand directly under the fall, and that he was obliged to do so to perform the services required of him. There was also some testimony of a very vague and unsatisfactory character tending to show that on some other steamships there was a rule or custom for the master to furnish an extra man to take the place of any man at the winch who should for any reason be called away. There was no evidence from which it could be fairly said that the master in any of these cases had adopted this rule, or enforced it, for the purpose of avoiding accidents such as occurred to the plaintiff. So far as the evidence goes, it is quite as reasonable to suppose that the extra man was provided for the purpose of facilitating the work, as to guard against accidents. It is hardly the class of evidence which is calculated to establish negligence on the part of the master in the present case, for the reason that it is not shown by the record before us that these other masters, contemplating the work to be done, had promulgated a rule to guard against the supposed danger, nor does the evidence tend to show that this so-called rule ever had any existence as an expression of the masters of any danger to be anticipated from the temporary absence of a man from the winch. The fair inference from the testimony in this regard is that on some of the steamships it was customary to have an extra man about who could be called upon to take a hand while another man absented himself from the work, but the evidence does not indicate that this was done for the purpose of

providing a means for the employés to go off to saloons for a drink, but rather where the man wanted to be away from his work. It should be remembered, in considering this case, that the loading of a ship is not done in a like manner under all circumstances. In the present case the work had been lowering spools of wire, in which the barrel of the winch was used, under steam control. It does not appear how the men were stationed in handling these spools, but the evidence shows that when the method of lowering was changed, as described in the former opinion, the plaintiff, with others, constructed a platform under the opening of the hatchway, and that they were at work upon this platform, under the middle of the opening, when the accident occurred. There is no evidence that this was the usual or customary way of handling drafts of the character then being lowered, or that it was necessary for the plaintiff and his fellow laborers to so construct the platform as to be compelled to work under the draft or fall, or that the master had any reason to suppose that the plaintiff and others would so place themselves in performing a detail of the work. There is no question here of the character of the winch, or of the appliances used. All of these questions were taken from the jury, and they were asked to determine whether, under the evidence, it was the duty of the master to promulgate rules requiring the presence of a man to help in the operation of the winch and the fall. It was, beyond all question, Jurgensen's duty to handle the rope in connection with the lowering of the draft. He had no right to leave his position for any purpose less urgent than a demand of nature. He was concededly a competent man. The master had discharged the duty of supplying a reasonably competent fellow employé, and, in order to spell out negligence on the part of the master, we must hold that the master, employing competent fellow servants, was bound to anticipate that Jurgensen would leave his post of duty for the purpose of going to a saloon for a drink, or for some other purpose, and leave his duties to be discharged by the man who was already engaged in operating the steam apparatus.

The question is not whether a rule requiring a second man to be present for the purpose of relieving the one on duty would have prevented this particular accident, but whether reasonable minded men, employing laborers to perform the customary labor of stevedores in ladening a ship, would think it necessary to make and enforce a rule which would require an extra man at each winch, lest the man there on duty should desert his post, or desire to do so. The common experience of men, in the absence of sudden illness, would not anticipate that competent employés would leave their posts, exposing to danger their fellow employés. Men are not customarily so limited in their control over their functions as to be compelled to leave their work during the ordinary hours of labor; at least, the cases are so rare that they form the exceptions which prove the rule, and it has generally—aye, almost universally—held, in the absence of statutory regulations to the contrary, that the master had discharged his duty when he had furnished a sufficient number of competent fellow servants to perform the work in hand, without burdening the master with the employment

of a second man to permit one to go out for a drink at a neighboring saloon. It is conceded that there were men enough to do the work. The accident, if it can be said to be proximately due to any fact in evidence, was caused by the absence of one of these men—an absence in this particular case which the defendant was not bound to anticipate, and we venture the assertion that a thousand men going on board this ship for the purpose of operating the machinery in the ladening of the same would not one of them think of employing a second man to provide against an accident such as the plaintiff has suffered. That is the test of negligence—whether reasonably prudent men would, in advance of the accident, have thought it necessary to promulgate the rule for which the plaintiff contends. We do not think the evidence had a tendency to show negligence on the part of the master in the matter of rules and regulations. The work was comparatively simple, and we may assume that if Jurgensen had performed the duty for which he was entirely competent, and for which he was employed and paid, the plaintiff would not have been injured. It was, therefore, the neglect of Jurgensen to perform his duty under the law of his employment which was at the foundation of the accident. If he would violate a rule of law, and he does violate a rule of law when he violates the contract of his employment, what reason is there to suppose he would have done differently if the master had promulgated a rule such as the plaintiff suggests, and he had not been permitted to leave except upon being relieved by a second man? Clearly the verdict of the jury is based entirely upon speculation, after the accident has happened, and not upon any evidence which, under the accepted doctrines of negligence, would impose any duty upon the master.

It is undoubtedly the law, as suggested by the respondent, that, when the business of the master is such that the safety of one servant depends upon the way in which other servants do their work, it is his duty to make, promulgate, and enforce reasonable and sufficient rules for the protection of the servant exposed to danger, but the trouble with this rule, stated in reference to railroads and complicated operations, is that it has no application to the situation presented by this record. It is not claimed that there was any danger from the manner in which the work was being performed by the men employed by the defendant for that purpose. The trouble arose when one of these men deserted his post and imposed a double duty on one of his fellow employés. The record does not show that this ever occurred before, or that any such accident had ever happened before, and, so long as Jurgensen performed his duty under his employment, it is not contended that there was any danger other than such as the plaintiff accepted. The negligence, if it was proximate, was the willful disregard of duty on the part of Jurgensen, and it would be most unjust to impose the liability upon the defendant for his wrong-doing.

The judgment and order appealed from should be reversed.

Judgment and order reversed and new trial granted, costs to abide the event. All concur.